

FILED

APR - 9 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTER DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | ) Case No. 09-14595-B-13 |
| Roy E. Garrett and<br>Donna S. Garrett, | ) |
| Debtors. | ) |
| | |
| Roy E. Garrett and<br>Donna S. Garrett, | ) Adversary Proceeding No. 09-1122 |
| Plaintiffs, | ) DC No. TJB-1 |
| v. | ) |
| United Security Bank, a<br>California corporation, | ) |
| Defendant. | ) |

**MEMORANDUM DECISION REGARDING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND ALTERNATIVE
MOTION FOR SUMMARY ADJUDICATION**

This disposition is not appropriate for publication. Although it may cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Timothy J. Buchanan, Esq., appeared on behalf of the movant/defendant, United Security Bank, a California Corporation.

Donald F. Drummond, Esq., appeared on behalf of debtors/plaintiffs, Roy E. Garrett and Donna A. Garrett.

1    Before the court is a motion for summary judgment or alternatively for

2    summary adjudication (the "Motion") filed by Defendant United Security Bank (the

3    "Bank"). The Motion is opposed by the Plaintiffs/Debtors, Roy E. and Donna S.

4    Garrett (the "Garretts"). This Motion relates to an adversary proceeding in which

5    the Garretts seek, *inter alia*, (1) a determination of their obligations to the Bank and

6    (2) cancellation of three deeds of trust the Bank holds against their real property.

7    For the reasons set forth below, the motion for summary adjudication of undisputed

8    facts and certain legal issues will be granted. The motion for summary judgment

9    will be denied.

10    This memorandum decision contains the court's findings of fact and

11    conclusions of law required by Federal Rule of Civil Procedure 52(a), made

12    applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure

13    7052. The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C.

14    §1334 and 11 U.S.C. §523[1] and General Orders 182 and 330 of the U.S. District

15    Court for the Eastern District of California. This is a core proceeding pursuant to 28

16    U.S.C. § 157(b)(2)(O).

17    **Background.**

18    Prior to the hearing on this Motion, the court circulated to counsel a draft

19    copy of this memorandum in the form of a tentative ruling. Each side had an

20    opportunity to comment on the tentative ruling and the following list of undisputed

21    facts includes the revisions agreed by counsel.[2] Upon review of the moving papers,

22

---

23    [1]Unless otherwise indicated, all chapter, section and rule references are to the

24    Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy
Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the

25    effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

26

27    [2]After the hearing, the court gave both parties an opportunity to submit a stipulation
of additional undisputed facts for inclusion in this memorandum and supplemental points

28    and authorities addressing the legal issues discussed below. Neither party submitted any

2

1    the arguments of counsel, and the evidence filed in support of and opposition to the

2    Motion, the following facts appear to be undisputed and ripe for summary

3    adjudication:

4        1. The Garretts are debtors in this bankruptcy case and the plaintiffs in this

5    adversary proceeding.

6        2. The Garretts are trustees of the Garrett Family Trust of 1994 (the "Garrett

7    Trust").[3]

8        3. At all relevant times, the Garrett Trust owned three parcels of real property

9    in Fresno County, which are the subject of this adversary proceeding and are more

10   particularly identified in undisputed fact no. 23 below (the "Garrett Properties").

11       4. The Garretts have two sons named Roy R. Garrett ("Roy R.") and Forrest

12   R. Garrett (together the "Garrett Brothers").

13       5. The Garrett Brothers own a California corporation known as Garrett

14   Brothers, Inc. ("GBI"). The Garretts have no interest in GBI.

15       6. On March 23, 2006, the Bank made an operating credit line loan to GBI in

16   the amount of $500,000 (the "$500,000 Loan"). The $500,000 Loan matured by its

17   terms on March 10, 2007. The $500,000 Loan is evidenced by a Commercial Loan

18   Agreement and a Promissory Note of even date.

19       7. On March 23, 2006, the Garretts, on behalf of the Garrett Trust, signed a

20   personal guaranty of the $500,000 Loan (the "First Guaranty").

21       8. The First Guaranty was limited to the $500,000 Loan and any "renewals,

22

23   supplemental materials.

24       [3]There is no evidence before the court as to the terms of the Garrett Trust. It is not
25   clear why the Garrett Trust was not named as a party to this adversary proceeding. Further,
     there is no evidence to suggest that the Garretts have or had any personal liability to the
26   Bank. All of the documents relevant to this adversary proceeding were issued in the name of
     the Garrett Trust. The court deems the Garretts' appearance and prosecution of this
27   adversary proceeding to be on behalf of themselves personally and as trustees of the Garrett
28   Trust.

3

1   extensions, modifications and substitutions" thereof (First Guaranty ¶ 3).

2       9. The First Guaranty was not a "continuing guarantee" within the meaning

3   of Cal.Civ.Code 2814. The First Guaranty specifically limited the Garrett Trust's

4   liability based on the principal balance of the $500,000 Loan. It contained a

5   provision at paragraph 2 which stated:

6           My liability will not exceed $500,000 of the principal amount
outstanding at default, plus accrued interest, attorneys' fees and

7           collection costs, when allowed by law, and all other costs, fees
and expenses agreed to be paid under all agreements

8           evidencing the Debt and securing the payment of the Debt.
You may, without notice, apply this Guaranty to such Debt of

9           the Borrower as you may select from time to time.

10       10. On September 6, 2006, the Garrett Brothers, on behalf of GBI, signed a

11   Renewal Promissory Note and Commercial Loan Agreement to renew the $500,000

12   Loan, increase the loan amount to $650,000, and restate the maturity date to be

13   March 10, 2007 (the "$650,000 Loan").

14       11. On the same date, the Garretts' son, Roy R., signed the Garretts' names,

15   on behalf of the Garrett Trust, to a new agreement, purportedly to guaranty the

16   $650,000 Loan (the "Second Guaranty").

17       12. At that time, the Garretts had no knowledge of the $650,000 Loan and

18   they did not authorize Roy R. to sign the Second Guaranty on behalf of themselves

19   or the Garrett Trust.

20       13. On March 27, 2007, the Garrett Brothers, on behalf of GBI, signed a

21   Renewal Promissory Note and a Commercial Loan Agreement to renew the

22   $650,000 Loan, increase the loan amount to $750,000, and extend the maturity date

23   to March 10, 2008 (the "$750,000 Loan").

24       14. On the same date, Roy R. signed the Garretts' names on behalf of the

25   Garrett Trust, to a new agreement, purportedly to guarantee the $750,000 Loan (the

26   "Third Guaranty").

27       15. At that time, the Garretts had no knowledge of the $750,000 Loan and

28   they did not authorize Roy R. to sign the Third Guaranty on behalf of themselves or

4

1    the Garrett Trust.

2         16. On or about March 10, 2008, GBI informed the Bank that it could not pay

3    the balance owing on the $750,000 Loan by the extended maturity date.

4         17. Thereafter, the Garretts and the Garrett Brothers met with representatives

5    of the Bank to discuss options for dealing with the debt, including a forbearance

6    agreement.

7         18. Prior to that meeting, the Garretts had no knowledge that Roy R. had

8    signed their names to the Second and Third Guaranties.

9         19. On April 21, 2008, the Garretts, on behalf of the Garrett Trust, signed a

10   Forbearance and Loan Workout Agreement (the "Forbearance Agreement'). Under

11   the Forbearance Agreement, the Bank agreed to forbear from enforcing its rights

12   under the $750,000 Loan until June 5, 2008.

13        20. The Forbearance Agreement included a list of documents that the Bank

14   was holding relating to the $750,000 Loan. With reference to the Third Guaranty,

15   the Forbearance Agreement recited:

16            A. WHEREAS, Lender is the current beneficial holder
                 of the following:
17            . . .

18            5. Those certain Guaranties dated March 27, 2007 (collectively
                 "Guaranties") executed by the Garrett Family Trust, Roy R.
19            Garrett, individually; and Forrest R. Garrett (collectively
                 hereinafter referred to as the "Guarantors"); in favor of Lender
20            wherein Guarantors, individually, agreed to all terms of and
                 guaranty of the payment and performance of the Note.
21

22        21. Other than the above reference to the pre-existing Guaranties, nothing in

23   the Forbearance Agreement constituted a new contractual guaranty of any of GBI's

24   debt to the Bank.

25        22. Prior to execution of the Forbearance Agreement, the Bank did not have a

26   lien on any of the Garrett Properties to secure GBI's debt. The Forbearance

27   Agreement makes no reference to pre-existing liens.

28        23. The Forbearance Agreement included three covenants whereby the

                                          5

1    Garretts agreed to execute deeds of trust against the Garrett Properties. The

2    Forbearance Agreement stated at paragraphs 2(e), (f) & (h) as follows:

3          2. Condition Precedent to Forbearance of Loan. Lender's
             forbearance of its rights to foreclose and/or commence other
4          action on its matured obligation of the Note is subject to the
             following:

5

6                . . .

7          e. As additional security for the Loan Obligation and as
             fair and adequate consideration for the forbearance
8          contemplated herein and to secure compliance with the
             terms contained herein, including the payment in full of
             the Note, Roy Garrett and Donna Garrett as trustees of
9          the Garrett Family Trust shall execute a new deed of
             trust encumbering that certain real property located in
10         Fresno County located at 8485 S. Chestnut Ave Fresno,
             California bearing Assessor's Parcel Number 335-170-
11         13 further described in Exhibit A attached hereto and
             made a part hereof (the "8485 S. Chestnut Deed of
12         Trust"). The 8485 S. Chestnut Deed of Trust shall be
             subordinate in lien priority only to a deed of trust in
13         favor of Federal Land Bank Association of Kingsburg,
             recorded May 22, 2003 as document number
14         20030114759;

15         f. As additional security for the Loan Obligation and as
             fair and adequate consideration for the forbearance
16         contemplated herein and to secure compliance with the
             terms contained herein, including the payment in full of
17         the Note, Roy Garrett and Donna Garrett as trustees of
             the Garrett Family Trust shall execute a new deed of
18         trust encumbering that certain 20-acre parcel of real
             property located in Fresno County on S. Chestnut Ave
19         Fresno, California bearing Assessor's Parcel Number
             335-140-23S further described in Exhibit B attached
20         hereto and made a part hereof (the "20-Acre Deed of
             Trust"). The 20-Acre Deed of Trust shall be
21         subordinate in lien priority only to a deed of trust in
             favor of Federal Land Bank Association of Kingsburg,
22         recorded May 22, 2003 as document number
             20030114759.

23

24                . . .

25         h. As additional security for the Loan Obligation and as
             fair and adequate consideration for the forbearance
26         contemplated herein and to secure compliance with the
             terms contained herein, including the payment in full of
             the Note, Roy Garrett and Donna Garrett as trustees of
27         the Garrett Family Trust shall execute a new deed of
             trust encumbering that certain real property located in
28         Fresno County located at 8529 S. Chestnut Ave Fresno,

                                   6

California bearing Assessor's Parcel Number 335-1701-12 further described in Exhibit D attached hereto and made a part hereof (the "8529 S. Chestnut Deed of Trust"). The 8529 S. Chestnut Deed of Trust shall be subordinate in lien priority only to a deed of trust in favor of Federal Land Bank Association of Kingsburg, record May 22, 2003 as document number 20030114759.

24. The Forbearance Agreement recited that the $750,000 Loan matured on March 10, 2008, and that it had an outstanding balance of $717,157.56.

25. Donna Garrett read the Forbearance Agreement before signing it but her husband Roy E. Garrett, elected not to read it before signing it.

26. On April 21, 2008, the Garretts, as trustees of the Garrett Trust, also executed and notarized three deeds of trust in favor of the Bank giving the Bank a security interest in the Garrett Properties (the "Trust Deeds').

27. Each of the Trust Deeds was given to secure "Secured Debts." The term "Secured Debts" was specifically defined at paragraph 3 of the Trust Deeds to include the $750,000 Loan documents signed by GBI, the Forbearance Agreement, and future obligations of GBI:

> 3. SECURED DEBTS. The term "Secured Debts" includes and this Security Instrument will secure each of the following:
>
> A. Specific Debts. The following debts and all extensions, renewals, refinancing, modifications and replacements.
>
> 1. A promissory note or other agreement, No. 80979801, dated March 27, 2007, from Garrett Brothers, Inc. (Borrower) to Lender, with a loan amount of $750,000.00. One or more of the debts secured by this Security Instrument contains a future advance provision.
>
> 2. A Forebearance [sic] and Loan Workout Agreement of even date herewith by and between Garrett Borthers, Inc., a California corporation, Roy Eugene Garrett and Donna Ann Garrett, as trustees of the Garrett Family Trust of 1994 dated February 7, 1994, Roy R. Garrett, Forrest R. Garrett and United Security Bank.
>
> B. All Debts. All present and future debts from Garrett

7

Brothers, Inc. to Lender, even if this Security Instrument
is not specifically referenced, or if the future debt is
unrelated to or of a different type than this debt. . . .

28. The Trust Deeds do not reference the Second and Third Guaranties and do not include any of the Guaranties in the description of "Secured Debts."

29. Donna Garrett read the Trust Deeds before signing them. Roy E. Garrett did not read the Trust Deeds.

30. On July 7, 2008, the Garretts, on behalf of the Garrett Trust, signed an Amendment to Forbearance and Loan Workout Agreement, further extending the forbearance term for the $750,000 Loan to August 5, 2008 (the "Amendment").

31. Donna Garrett read the Amendment before she signed it.

32. GBI defaulted on the terms of the $750,000 Loan, the Forbearance Agreement, and the Amendment.

**Issues Presented.**

There are two issues to be decided in this adversary proceeding; (1) Is the Garrett Trust personally liable to the Bank for any part of GBI's debt to the Bank, and (2) Does the Bank hold an enforceable lien against the Garrett Properties to secure GBI's debt?

**A. Applicable Law.**

**1. Summary Judgment Standard.**

Summary judgment is appropriate, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone, although there is a genuine issue as to the amount of damages." Fed. R. Civ. P. 56(c), (made applicable in this adversary proceeding by Fed. R. Bankr. P. 7056).

A material fact is one that might affect the outcome of the suit under the governing law and irrelevant or unnecessary factual disputes will not be considered

8

in a motion for summary judgment. *Anderson, et al. v. Liberty Lobby, Inc., et al.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

The moving party bears the burden of showing that there is no genuine dispute as to each issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986). However, the party adverse to a motion for summary judgment cannot simply deny the pleadings of the movant; the adverse party must designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). More precisely, "[i]t is not enough that the nonmoving party point to disputed facts; rather, they must make a sufficient showing to establish the existence of a triable issue of material fact as to an element essential to the moving party's case." *In re Powerburst Corporation*, 154 B.R. 307, 309-310 (Bankr.E.D.Cal. 1993), citing *Lake Nacimiento Ranch v. San Luis Obispo County,* 830 F.2d 977, 979-980 (9th Cir.1987), cert. denied 488 U.S. 827, 109 S.Ct. 79, 102 L.Ed.2d 55 (1988).

The parties may use summary judgment to dispose of all or any part thereof the opponents claim or cross claim. Fed.R.Civ.P. 56(a) & (b). The court may sua sponte grant summary judgment in favor of a nonmoving party as long as the moving party was provided a "full and fair opportunity to ventilate the issues in the motion." *United States v. Real Property Located at 25445 via Dona Christa, Valencia California,* 138 F.3d 403, 407, n.4 (9th Cir. 1998), citing *Cool Fuel, Inc. v. Connett,* 685 F.2d 309, 311 (9th Cir. 1982). The filing of a formal cross-motion is not necessary. *Local 453, International Union of Electrical, Radio & Machine Workers, AFL-CIO v. Otis Elevator Company,* 314 F.2d 25, 27 (2d Cir. 1963).

**Analysis.**

**The Garretts' Personal Liability.**

There is no dispute that the First Guaranty, which the Garretts signed on behalf of the Garrett Trust to guarantee the $500,000 Loan, was limited to that obligation. It was not a "continuing guaranty" within the meaning of Cal.Civ.Code

9

§ 2814. GBI and the Bank agreed twice to renew and extend the terms and substantially increase the amount of GBI's obligation, but the Garretts were not part of those negotiations and their signatures on the Second and Third Guaranties were forged by Roy R. The substantial increase in GBI's debt under the $650,000 and $750,000 Loans did not fall within the scope of a "renewal, extension, modification, and substitution" of the $500,000 Loan which is all the Garretts consented to when they signed the First Guaranty. Under applicable California law, the Bank's agreement to substantially increase the amount of GBI's debt, without the knowledge or consent of the Garretts, fully exonerated the Garrett Trust from any further liability under the First Guaranty. Cal.Civ.Code § 2819.[4] That exoneration became effective upon GBI's execution of the $650,000 Loan without regard to subsequent events that took place in March 2008. The Garrett Trust was not bound by the Second and Third Guaranties because the Garretts did not sign them.

When the Garretts met with the Bank in early March 2008 to discuss the Forbearance Agreement, neither they nor the Garrett Trust had any liability to the Bank. It is undisputed that the Garretts had no knowledge of the $650,000 and $750,000 Loans prior to that meeting. It is undisputed that prior to that meeting, the Garretts had no knowledge of the Second and Third Guaranties, or that Roy R. had signed their names to those documents. The Bank contends that by signing the Forbearance Agreement, which referenced the $750,000 Loan documents and the Third Guaranty, the Garretts implicitly ratified Roy R.'s forgery of their names on

---

[4]Civil Code § 2919 states in pertinent part:

> A surety is exonerated, except so far as he or she may be indemnified by the principal, if by any act of the creditor, without the consent of the surety the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way impaired or suspended.

10

1    the Third Guaranty and retroactively gave Roy R. authority to do so.[5]  However,

2    ratification involves numerous questions of fact which cannot be decided in this

3    motion for summary judgment.  Under California law, implied ratification of an

4    agent's act can be made by accepting or retaining the benefit of the act with notice

5    of the act.  *Ach v. Finkelstein*, 264 Cal.App.2d 667, 677 (1968).  Ordinarily, "[a]

6    principal must have knowledge of material facts at the time of the alleged

7    ratification in order to be held liable for the unauthorized act of another."  *Chastain*

8    *v. Belmont*, 43 Cal.2d 45, 58 (1954).

9         Here, Roy R. was not acting as an agent, or purported agent, for the Garretts

10    when he signed their names to the Third Guaranty.  The Bank must therefore show

11    that the Garretts, in executing the Forbearance Agreement and the Trust Deeds, had

12    full knowledge that Roy R. had forged their names to the Third Guaranty and

13    accepted what Roy R. had done.  *See Gates v. Bank of America Nat. Trust &*

14    *Savings Ass'n*, 120 Cal.App.2d 571, 547-48 (1953), *citing Ralphs v. Hensler*, 97 Cal

15    296, 302-03 (1893).

16         The Bank also contends that the Garretts are estopped by their execution of

17    the Forbearance Agreement from denying that the Garrett Trust has any personal

18    liability to the Bank.  "Estoppel has been invoked where one has been induced by

19    the dilatory or negligent conduct of another to refrain from taking such action as lay

20    in his power to retrieve his position and save himself from loss."  *Reusche v.*

21    *California Pacific Title Ins. Co.*, 231 Cal.App.2d 731, 738 (1965).

22         Estoppel is an equitable doctrine which here depends on unanswered

23    questions and disputed facts.  Perhaps the foremost unanswered question is, did the

24    Bank know, or should the Bank have known, that the Garretts' signatures on the

25    Second and Third Guaranties had been forged by Roy R. at the time it accepted

26    _____

27         [5]The Bank also argued at the hearing that the Garretts expressly ratified the Third
      Guaranty.  The court is not ruling here that the Bank cannot pursue an express ratification
28    theory at trial.

11

1   those documents and at the time it prepared the Forbearance Agreement referencing

2   those Guaranties?  Based on the deposition testimony of Roy R., there is a triable

3   issue of material fact as to what the Bank's representative, Patricia Knoch, knew or

4   should have known at the time she gave the unsigned Guaranty documents to Roy

5   R., watched him leave the building, and accepted the "signed" documents back from

6   him a few minutes later.  Ms. Knoch did not personally witness the execution of

7   those documents and she apparently did nothing to confirm that the Garretts were

8   actually waiting outside the Bank and personally signed them.  Did the Bank follow

9   commercially appropriate or reasonable protocol by doing that?

10      The Bank complains about the Garretts' lack of diligence and negligence in

11  failing to review and inquire about the recitals in the Forbearance Agreement.  The

12  Garretts cannot be held to a higher standard of diligence and care than the Bank.

13  Indeed, under California law, a creditor has the duty to act in the utmost good faith

14  toward a surety.  *Ely v. Liscomb*, 24 Cal.App.224, 228 (1914).  If the Bank knew or

15  should have known about the forgeries and failed to tell the Garretts at anytime after

16  it accepted the forged documents from Roy R., then it would be very difficult for a

17  court to find in favor of the Bank on its estoppel and ratification theories.

18      In summary, the Garrett Trust was exonerated from the First Guaranty and

19  the Garretts did not sign the Second and Third Guaranties.  The Forbearance

20  Agreement and the Trust Deeds do not constitute a new contractual personal

21  guaranty of the GBI debt.  The court is persuaded that neither the Garretts, nor the

22  Garrett Trust, have any personal liability to the Bank for any of the GBI debt unless

23  the Bank can prevail on its ratification and estoppel claims and retroactively bind

24  the Garrett Trust to the terms of the Third Guaranty.  The Bank's right to relief

25  involves numerous disputed issues of material fact and cannot be resolved on this

26  record by summary judgment.  The Bank will bear the burden of proof on the

27  ratification and estoppel claims.

28  / / /

12

**The Bank's Security Interest in the Garrett Properties.**

Again, there is no dispute that the Garretts executed the Forbearance Agreement and the Trust Deeds on behalf of the Garrett Trust. Based on the language in those documents, the court is persuaded that those documents, on their face, are sufficient to create liens against the Garrett Properties which secure all of GBI's debt to the Bank. Notably, the Trust Deeds secure only GBI's obligations to the Bank. They make no reference to any of the Guaranties, so the forgery/ratification/estoppel issues, while relevant, are not determinative of the affect of the Trust Deeds. By hypothecating its property to secure the debts of GBI, the Garrett Trust became a surety under California law. Cal.Civ.Code § 2787. The Garrett Trust is entitled to pursue all of the defenses and remedies available to a surety under applicable law. The Garrett Trust was exonerated from the First Guaranty and none of the waivers in the Second and Third Guaranties have any application unless the Bank can establish that, under the theories discussed above, the Garrett Trust should be bound by the terms of those documents.

The Garretts have pled a claim to rescind or cancel the Trust Deeds based on various theories, including fraud and duress, and failure of consideration. "Whether or not there is a sufficient consideration to support a contract is always a question of fact." *In re Thomson's Estate*, 165 Cal. 290, 296 (Cal. 1913). Pursuant to Cal.Civ.Code § 2792, a forbearance agreement, such as the one at hand, "not having been entered into concurrently with the original obligation, requires a consideration to support it." *Id.* The Bank disputes the Garretts' right to relief under any theory. Again, those claims involve numerous factual issues which cannot be decided on this record by summary judgment.

The Bank's liens against the Garrett Properties are subject to the Garrett Trust's right to rescind or cancel the Trust Deeds under applicable law. Under California law, deeds of trust may be subject to cancellation or rescission on various grounds, including fraudulent misrepresentation. *Security-First Nat.Bank of Los*

13

1 | *Angeles v. Earp*, 19 Cal.2d 774 (1942). Under Cal.Civ.Code § 1689(b)(1), contracts
2 | may be subject to rescission because consent was made by mistake, or obtained
3 | through duress, menace, fraud, or undue influence. *Donovan v. RRL Corp.* 26
4 | Cal.4th 261 (2001). The Garretts will bear the burden of proof on their
5 | rescission/cancellation claims.

6 | **Conspiracy to Defraud An Elder Abuse.**

7 | The Garretts allege in the second and fifth claims for relief that the Bank
8 | conspired to perpetrate a fraud on them and that the Bank committed elder abuse
9 | within the meaning of applicable state law. The Bank denies the allegations in the
10 | second and fifth claims for relief. The Motion with regard to those claims is
11 | premised on the assumption that the Bank will prevail on its ratification and
12 | estoppel claims. These issues cannot be decided without an evidentiary hearing.

13 | **Conclusion.**

14 | Based on the foregoing, the Bank's Motion for summary adjudication of the
15 | undisputed facts listed above will be granted. There appears to be no triable issue as
16 | to any of those facts.

17 | As to the legal issues discussed above, the court is persuaded that as of early
18 | March 2008, when the Garretts met with the Bank to discuss GBI's default, neither
19 | the Garretts nor the Garrett Trust had any personal liability to the Bank and the
20 | Bank had no lien against the Garrett Properties. There is no triable issue of material
21 | fact as to the relevant events which preceded that meeting and the court can make
22 | that determination as a matter of law.

23 | However, the relationship between the Garrett Trust and the Bank may have
24 | changed as a result of their meeting. The Garrett Trust will not be personally liable
25 | for GBI's debt to the Bank unless the Bank can prove, based on its ratification and
26 | estoppel theories, that the Garrett Trust should be bound by the terms of the Third
27 | Guaranty. There is no triable issue of material fact that the Garretts signed the
28 | Forbearance Agreement and the Trust Deeds on behalf of the Garrett Trust. By

14

1  signing the Trust Deeds, the Garretts gave the Bank liens against the Garrett
2  Properties to secure the outstanding GBI debt.  In so doing, the Garrett Trust
3  became a statutory surety under applicable law.  The Garrett Properties will not be
4  free and clear of the Bank's liens unless the Garretts can prove a basis to set aside
5  the Trust Deeds under applicable law.
6      Dated: April ____9____, 2010
7
8
9                              W. Richard Lee
                              United States Bankruptcy Judge
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28