# IN THE UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF CALIFORNIA

### FRESNO DIVISION

| | |
|---|---|
| In the Matter of Roy E. and Donna A. Garrett, d.b.a. Garrett Farms,<br><br>    Debtors.<br>_____<br>ROY E. GARRETT and DONNA A. GARRETT, individually and as Trustees of the Garrett Family Trust of 1994 dated February 7, 1994, and d.b.a. GARRETT FARMS,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED SECURITY BANK, a California Corporation,<br><br>    Defendant.<br>_____ | Case No. 09-14595-B-12<br><br><br><br>Adv. No. 09-1122-B<br><br>**FINDINGS OF FACT** AND **CONCLUSIONS OF LAW**<br><br>Trial Date: May 5-6, 2010<br>Honorable Richard T. Ford |

       This matter came on regularly for trial before the court on May 5-6, 2010, in Courtroom 13 of the above-entitled Court. The evidence having been introduced, the matter having been submitted, and the court having considered the Memorandum Decision Regarding Defendant's Motion for Summary Judgment and Alternative Motion for Summary Adjudication, dated April 9, 2010 ("Decision"), in these proceedings, the Court makes the following findings of fact and conclusions of law.

### APPEARANCES

       Donald F. Drummond, Esq., appeared on behalf of Plaintiffs and Debtors Roy E. Garrett and Donna A. Garrett, individually and as Trustees of the Garrett Family trust of 1994 dated February 7, 1994, and d.b.a. Garrett Farms. Timothy J. Buchanan, Esq.,

appeared on behalf of United Security Bank.

## JURISDICTION

Jurisdiction exists under 28 U. S. C. 1334 and 11 U. S. C. 523 Venue is proper under 28 U. S. C. 1409 (a). The District Court has generally referred these matters to the Bankruptcy Court for hearing pursuant to 28 U. S. C. 157(a) and the United States District Court, Eastern District of California General Orders 182 and 223. This is a core proceeding within the meaning of 28 U. S. C. 157(b) (2) (O).. These Findings and Conclusions are made pursuant to the Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.

## **FINDINGS OF FACT**

1. Roy E. Garrett and Donna A. Garrett (collectively, "the Garretts") are debtors in this bankruptcy. Decision, 1.[1]

2. The Garretts are trustees of the Garrett Family Trust of 1994 dated February 7, 1994 (the "Garrett Trust"). They, as trustees, are the plaintiffs in this adversary proceeding. First Amended Complaint; Decision, 2.

3. At all relevant times, the Garrett Trust owned three parcels of real property in Fresno County (the "Garrett Properties), which are the subject of this adversary proceeding and are more particularly identified in undisputed fact no. 34 below. Decision, 3.

4. The Garretts have two sons named Roy Russell Garrett ("Russ") and Forrest R. Garrett (collectively, the "Garrett Brothers"). Decision, 4.

5. The Garrett Brothers own a California corporation known as Garrett Brothers, Inc. ("GBI"). The Garretts have no interest in GBI. Decision, 5.

6. On March 23, 2006, defendant United Security Bank ("USB") made an operating credit line loan to GBI in the amount of $500,000 (the "$500,000 Loan"). The $500,000 Loan matured by its terms on March 10, 2007. The $500,000 Loan is evidenced by a

---

[1] "Decision" references are to the summary adjudication of facts made in the Decision.

2

Commercial Loan Agreement and a Promissory Note of even date. Decision, 6.

7. On March 23, 2006, the Garretts, on behalf of the Garrett Trust, signed a personal guaranty of the $500,000 Loan (the "First Guaranty"). Decision, 7.

8. The First Guaranty was limited to the $500,000 Loan and any "renewals, extensions, modifications and substitutions" thereof. See First Guaranty, ¶3. Decision, 8.

9. The First Guaranty was not a "continuing guaranty" within the meaning of Cal. Civ. Code §2814. The First Guaranty specifically limited the Garrett Trust's liability based on the principal balance of the $500,000 Loan. It contained a provision at paragraph 2 which stated:

> My liability will not exceed $500,000 of the principal amount outstanding at default, plus accrued interest, attorneys' fees and collection costs, when allowed by law, and all other costs, fees and expenses agreed to be paid under all agreements evidencing the Debt and securing the payment of the Debt. You may, without notice, apply this Guaranty to such Debt of the Borrower as you may select from time to time.

Decision 9.

10. On September 6, 2006, the Garrett Brothers, on behalf of GBI, signed a Renewal Promissory Note and Commercial Loan Agreement to renew the $500,000 Loan, increase the loan amount to $650,000, and restate the maturity date to be March 10, 2007 (the "$650,000 Loan"). Decision 10.

11. On the same date, the Garretts' son, Roy R, signed the Garretts' names, on behalf of the Garrett Trust, to a new agreement, purportedly to guaranty the $650,000 Loan (the "Second Guaranty"). Decision 11.

12. At the time, the Garretts had no knowledge of the $650,000 Loan and they did not authorize Russ to sign the Second Guaranty on behalf of themselves or the Garrett Trust. Decision 12.

13. On March 27, 2007, the Garrett Brothers, on behalf of GBI, signed a Renewal Promissory Note and a Commercial Loan Agreement to renew the $650,000 Loan, increase the loan amount to $750,000, and extend the maturity date to March 10, 2008 (the "$750,000 Loan"). Decision 13.

14. On the same date, Russ signed the Garretts' names on behalf of the Garrett Trust, to a new agreement, purportedly to guarantee the $750,000 Loan (the "Third Guaranty"). Decision 14.

15. At the time, the Garretts had no knowledge of the $750,000 Loan and they did not authorize Russ to sign the Third Guaranty on behalf of themselves or the Garrett Trust. Decision 15.

16. At the time Russ (Roy R.) signed his parents' names to the second and third guarantees, the Bank did not have either a policy or a practice under which required loan documents to be executed before a representative of the bank. RT 141:19 - 183:8; 150:5-15. Commencing sometime in 2008 such a policy was instituted. RT 150:5-20.

17. Russ (Roy R.) Garrett signed his parents' name to the Second Guaranty at the offices of Garrett Brothers in Reedley when Roy E. and Donna Garrett were not present. RT 10:5 - 12:2. He received the Third Guaranty along with other documents, at the bank, walked outside, executed them, walked back into the branch and gave them to the branch. RT 12:3 - 13:18. He had signed the names of others in the same manner on loan documents on multiple occasions. *Id.*, 14:17 – 17:16.

18. Loan officer Knoch had no recollection of the circumstances under which the second or third guarantees were delivered to the Garretts for execution, how or when they were executed or how they were received by the bank. RT 169:25 – 171:3.

19. On or about March 10, 2008, GBI informed the Bank that it could not pay the balance owing on the $750,000 Loan by the extended maturity date. Decision 16.

20. Thereafter, the Garretts and the Garrett Brothers met with representatives of the Bank to discuss options for dealing with the debt, including a forbearance agreement. Decision 17.

21. Prior to that meeting, the Garretts had no knowledge that Russ (Roy R.) had signed their names to the Second and Third Guaranties. Decision 18.

22. In approximately March 2008, Roy E. Garrett and Russ (Roy R.) Garrett met with bank officer, Stan Cornwell. Roy E. Garrett stated that there was a mistake and that he

1  and his wife owed the bank nothing. RT 86:22 – 89:7.

2     23. At the meeting of March 8, 2008, Roy E. Garrett asked Cornwell how the debt had gotten to the sum of $750,000. *Id.*; 94:7-15.

    24. Later in March, Donna A. Garrett, Forrest Garrett and Christy Garrett met with loan officer Cornwell and senior vice president, Paul Thaxter to discuss the matter. The subject of a Forbearance Agreement supported by the Garretts' real property collateral was discussed. Mrs. Garrett also asked the loan officers how the debt had increased to $750,000. RT 43:7 –44:23.

    25. The only explanation the bank gave to the Garretts about the basis of the claim against the Garretts or how the debt had increased from $500,000 to $750,000 was that the credit was increased. RT 44:2-10; 94:7-15. The bank never mentioned the existence of the second or third guarantee to the Garretts or offered to show them copies of those guarantees. *Id.*; 44:16 – 45:25.

    26. Mrs. Garrett believed at this meeting that if she did not execute the forbearance agreement, the bank would foreclose. RT 46:2 – 47:7.

    27. On or about March 18, 2009, Christy Garrett spoke with Stan Cornwell about the status of the execution of a Forbearance Agreement. She asked Cornwell what would happen if the Forbearance Agreement was not executed. Cornwell stated to her that the bank would foreclose on the Garretts' property. RT 102:15 – 105:2.

    28. Christy Garrett thereafter told her mother-in-law, Donna A. Garrett that Cornwell had said that unless the Forbearance Agreement was executed the bank would foreclose on the property. RT 105:2 – 106:6.

    29. The Garretts were emotionally upset about the fear of losing their property. RT 46:2 – 47:7; 49:15 – 50:14; 52:17 – 53:5; 72:22 – 74:16; 90:10 – 92:11. Donna Garrett said at RT 50:18 that "I thought the Bank had the right to use those tactics" and then she further testified that "the rules allowed the Bank to treat us this way".

    30. On April 21, 2008, when they met Stan Cornwell and Paul Thaxter at the bank to sign three deeds of trust to their property, the Garretts again asked how the loan got so high.

Again, they were told that the credit line had been increased. They were not told about either the second or third guarantees nor were they shown copies of them. RT 92:6-18; 44:11 – 45:25; 50:15 – 51:5.

31. On April 21, 2008, the Garretts, on behalf of the Garrett Trust, signed a Forbearance and Loan Workout Agreement (the "Forbearance Agreement"). Under the Forbearance Agreement, the Bank agreed to forbear from enforcing its rights under the $750,000 Loan until June 5, 2008. Decision 19.

32. The Forbearance Agreement included a list of documents that the Bank was holding relating to the $750,000 Loan. With reference to the Third Guaranty, the Forbearance Agreement recited:

> A. WHEREAS, Lender is the current beneficial holder of the following:
>
> . . .
>
> 5. Those certain Guaranties dated March 27, 2007 (collectively "Guaranties") executed by the Garrett Family Trust, Roy R. Garrett, individually; and Forrest R. Garrett (collectively hereinafter referred to as the "Guarantors"); in favor of Lender wherein Guarantors, individually, agreed to all terms of and guaranty of the payment and performance of the Note.

Decision 20.

33. Other than the above reference to the pre-existing Guaranties, nothing in the Forbearance Agreement constituted a new contractual guaranty of any of GBI's debt to the Bank. Decision 21.

34. Prior to execution of the Forbearance Agreement, the Bank did not have a lien on any of the Garrett Properties to secure GBI's debt: The Forbearance Agreement makes no reference to pre-existing liens. Decision 22.

35. The Forbearance Agreement included three covenants whereby the Garretts agreed to execute deeds of trust against the Garrett Properties. The Forbearance Agreement stated at paragraphs 2 (e), (f) & (h) as follows:

> 2. <u>Condition Precedent to Forbearance of Loan.</u> Lender's forbearance of its rights to foreclose and/or commence other action on its matured obligation of the Note is subject to the following:

. . .

    e. As additional security for the Loan Obligation and as fair and adequate consideration for the forbearance contemplated herein and to secure compliance with the terms contained herein, including the payment in full of the Note, Roy Garrett and Donna Garrett as trustees of the Garrett Family Trust shall execute a new deed of trust encumbering that certain real property located in Fresno County located at 8485 S. Chestnut Ave., Fresno, California bearing Assessor's Parcel Number 335-170-13 further described in Exhibit A attached hereto and made a part hereof (the "8485 S. Chestnut Deed of Trust"). The 8485 S. Chestnut Deed of Trust shall be subordinate in lien priority only to a deed of trust in favor of Federal Land Bank Association of Kingsburg, recorded May 22, 2003 as document number 20030114759;

    f. As additional security for the Loan Obligation and as fair and adequate consideration for the forbearance contemplated herein and to secure compliance with the terms contained herein, including the payment in full of the Note, Roy Garrett and Donna Garrett as trustees of the Garrett Family Trust shall execute a new deed of trust encumbering that certain 20-acre parcel of real property located in Fresno County on S. Chestnut Ave., Fresno, California bearing Assessor's Parcel Number 335-140-23S further described in Exhibit B attached hereto and made a part hereof (the "20-Acre Deed of Trust"). The 20-Acre Deed of Trust shall be subordinate in lien priority only to a deed of trust in favor of Federal Land Bank Association of Kingsburg, recorded May 22, 2003 as document number 20030114759.

. . .

    h. As additional security for the Loan Obligation and as fair and adequate consideration for the forbearance contemplated herein and to secure compliance with the terms contained herein, including the payment in full of the Note, Roy Garrett and Donna Garrett as trustees of the Garrett Family Trust shall execute a new deed of trust encumbering that certain real property located in Fresno County located at 8529 S. Chestnut Ave., Fresno, California bearing Assessor's Parcel Number 335-1701-12 further described in Exhibit D attached hereto and made a part hereof (the "8529 S. Chestnut Deed of Trust"). The 8529 S. Chestnut Deed of Trust shall be subordinate in lien priority only to a deed of trust in favor of Federal Land Bank Association of Kingsburg, record May 22, 2003 as document number 20030114759.

Decision 23.

    36. The Forbearance Agreement recited that the 750,000 Loan matured on March 10, 2008, and that it had an outstanding balance of $717,157.56. Decision 24.

    37. Donna Garrett read the Forbearance Agreement before signing it but her husband

Roy E. Garrett, elected not to read it before signing it. Decision 25.

38. On April 21, 2008, the Garretts, as trustees of the Garrett Trust, also executed and notarized three deeds of trust in favor of the Bank giving the Bank a security interest in the Garrett Properties (the "Trust Deeds"). Decision 26.

39. Each of the Trust Deeds was given to secure "Secured Debts." The term "Secured Debts" was specifically defined at paragraph 3 of the Trust Deeds to include the $750,000 Loan documents signed by GBI, the Forbearance Agreement, and future obligations of GBI:

> 3. SECURED DEBTS. The term "Secured Debts" includes and this Security Instrument will secure each of the following:
>
> A. Specific Debts. The following debts and all extensions, renewals, refinancing, modifications and replacements.
>
> 1. A promissory note or other agreement, No. 80979801, dated March 27, 2007, from Garrett Brothers, Inc. (Borrower) to Lender, with a loan amount of $750,000.00. One or more of the debts secured by this Security Instrument contains a future advance provision.
>
> 2. A Forbearance [sic] and Loan Workout Agreement of even date herewith by and between Garrett Brothers, Inc., a California corporation, Roy Eugene Garrett and Donna Ann Garrett, as trustees of the Garrett Family Trust of 1994 dated February 7, 1994, Roy R. Garrett, Forrest R. Garrett and United Security Bank.
>
> B. All Debts. All present and future debts from Garrett Brothers, Inc. to Lender, even if this Security Instrument is not specifically referenced, or if the future debt is unrelated to or of a different type than this debt…

Decision 27.

40. The Trust Deeds do not reference the Second and Third Guaranties and do not include any of the Guaranties in the description of "Secured Debts." Decision 28.

41. Donna Garrett read the Trust Deeds before signing them. Roy E. Garrett did not read the Trust Deeds. Decision 29.

42. On July 7, 2008, the Garretts, on behalf of the Garrett Trust, signed an Amendment to Forbearance and Loan Workout Agreement, further extending the

8

forbearance term for the $750,000 Loan to August 5, 2008 (the "Amendment"). Decision 30.

43. Donna Garrett read the Amendment before she signed it. Decision 31.

44. GBI defaulted on the terms of the $750,000 Loan, the Forbearance Agreement and the Amendment. Decision 32.

45. Christy Garrett requested copies of the loan documents from Stan Cornwell in July 2008. What she received did not include the second or third guarantees. RT 107:1 – 108:25.

46. In October, the bank finally provided copies of the second and third guarantees. RT 109:3 – 110:16; 123:1 – 124:15.

47. USB commenced foreclosure and set a trustee's sale for May 20, 2009. USB's trial brief, 4:6-7.

## DISCUSSION

There is no dispute that the First Guaranty, which the Garretts signed on behalf of the Garrett Trust to guarantee the $500,000 Loan, was limited to that obligation. It was not a "continuing guaranty" within the meaning of Cal. Civ. Code 2814. GBI and the Bank agreed twice to renew and extend the terms and substantially increase the amount of GBI's obligation, but the Garretts were not part of those negotiations and their signatures on the Second and Third Guaranties were forged by Roy R. The substantial increase in GBI's debt under the $650,000 and $750,000 Loans did not fall within the scope of a "renewal, extension, modification, and substitution" of the $500,000 Loan which is all the Garretts consented to when they signed the First Guaranty. Under applicable California law, the Bank's agreement to substantially increase the amount of GBI's debt, without the knowledge or consent of the Garretts, fully exonerated the Garrett Trust from any further liability under the First Guaranty. Cal.Civ.Code 2819. That exoneration became effective upon GBI's execution of the $650,000 Loan without regard to subsequent events that took place in March 2008. The Garrett Trust was not bound by the Second and Third Guaranties because the

Garretts did not sign them.

When the Garretts met with the Bank in early March 2008 to discuss the Forbearance Agreement, neither they nor the Garrett trust had any liability to the Bank. It is undisputed that the Garretts had no knowledge of the $650,000 and $750,000 Loans prior to that meeting. It is undisputed that prior to that meeting, the Garretts had no knowledge of the Second and Third Guaranties, or that Roy R. had signed their names to those documents. The Bank contends that by signing the Forbearance Agreement, which referenced the $750,000 Loan documents and the Third Guaranty, the Garretts implicitly ratified Roy R."s forgery of their names on the Third Guaranty and retroactively gave Roy R authority to do so. Ratification involves numerous questions of fact. Under California law, implied ratification of an agent's act can be made by accepting or retaining the benefit of the act with notice of the act. Ach v. Finkelstein, 264 Cal.App.2d 667, 677 (1968). Ordinarily, "(a) principal must have knowledge of material facts at the time of the alleged ratification in order to be held liable for the unauthorized act of another." Chastain v Belmont, 43 Cal.2d 45,58 (1954) . Unfortunately for the Bank the Court has found that the evidence strongly shows that there was no implied ratification as the Garretts did NOT have notice or knowledge of their sons acts in this regard. The burden of proof is upon the Bank to prove ratification and they have failed to meet their burden.

The Court was not impressed with the credibility of the witness Stan Cornwell. In response to almost every question posed to him by Plaintiff's counsel (RT-82-85) his response was "I don't recall". On the other had his responses to the questions of the Bank's counsel where always "yes" or "no", at least to most questions. The Court was so concerned about his lack of knowledge about things that a Loan Officer should know about one of his cases that questions were ask of this witness by the Court. RT 139 L 9-25; RT 140 L1-25. The witness apparently took few notes, did not recall conversation and with who, where they took place and what transactions actually took place. His testimony was of very little help .

Roy R. was not acting as an agent, or purported agent, for the Garretts when he signed their names to the Third Guaranty. The bank must therefore show that the Garretts, in executing the Forbearance Agreement and the Trust Deeds, had full knowledge that Roy R.had forged their names to the Third Guaranty and accepted what Roy R. had done. See Gates v Bank of America , 120 Cal.App.2d 571-48 (1953)m citing Ralphs v. Hensler, 97 Ca 296, 302-03 (1893). The proof is that the Garrett did NOT have full knowledge that Roy R. had forged their names to the Third Guaranty.

The Bank also contends that the Garretts are estopped by their execution of the Forbearance Agreement from denying that the Garrett Trust has any personal liability to the Bank. "Estoppel has been invoked where one has been induced by the dilatory or negligent conduct of another to refrain from taking such action as lay in his power to retrieve his position and save himself from loss. " Reusche v. Calaifornia Pacific Title Co , 231 Cal.App.2d 731,738 (1965). Estoppel is a equitable doctrine and the Bank has the Burden on this issue. The evidence is clear that the Bank either knew or should have known, that the Garretts' signatures on the Second and Third Guaranties had been forged by Roy R. at the time they accepted those documents and at the time it prepared the Forbearance Agreement referencing those Guarantees. The testimony of Loan Officer Knoch was that she had no recollection how the three documents were delivered from the Bank or returned. The testimony of Roy R. was that he received the Third Guaranty along with other documents, at the bank, walked outside, executed them, walked back into the branch and gave them to the branch. He had signed the names of others in the same manner on loan documents on multiple occasions. See the Courts Finding of Fact 17. The fact that the witness has a past felony conviction does not make his entire testimony untrue or unbelievable and in this instance the Court choose to believe his testimony.

The Bank takes the position that the Garretts' failed to review and inquire about

11

1   the recitals in the Forbearance Agreement and that this constituted negligence and a lack of
2   diligence. The Garretts cannot be held to a higher standard of diligence and care than that of
3   the Bank. Under California law, a creditor has the duty to act in the utmost good faith toward
4   a surety. Ely v. Liscomb, 24 Cal.App.224,228(19914). If the Bank knew or should have
5   known about the forgeries and failed to tell the Garretts at anytime after it accepted the
6   forged documents from Roy R. then it would be very difficult for a court to find in favor of
7   the Bank on its estoppels ratification theories. In fact this Court believes that the Bank has
8   failed to make such a showing.

10   In summary, the Garrett Trust was exonerated from the First Guaranty and the
11  Garretts did not sign the Second and Third Guaranties. The Forbearance Agreement and the
12  Trust Deeds do not constitute a new contractual personal guaranty of the GBI debt. The
13  Court is persuaded that neither the Garretts, nor the Garrett Trust, have any personal liability
14  to the Bank for any of the GBI debt because the Bank has failed to prove its ratification and
15  estoppel claims which would have retroactively bound the Trust to the terms of the Third
16  Guaranty.

18  There is no dispute that the Garretts executed the Forbearance Agreement and the
19  Trust Deeds on behalf of the Trust. Therefore liens were created against the Garrett
20  Properties which secure all of the GBI's debt to the Bank. The Trust Deeds secure only
21  GBI's obligations to the Bank. They make no reference to any of the Guaranties, so the
22  forgery/ratification/estoppel issues, are not determinative of the affect of the Trust Deeds.
23  By hypothecating its property to secure the debts of GBI, the Trust became a surety under
24  California law. The Trust was exonerated from the First Guaranty and none of the waivers in
25  the Second and Third Guaranties have any application unless the Bank could have
26  established that the Trust should be bound by the terms of those documents. The Garretts
27  have pled a claim to rescind or cancel the Trust Deeds based on the theory of fraud, duress,
28  and failure of consideration. "Whether or not there is a sufficient consideration is a question

of fact." In re Thomson's Estate, 165 Cal.290,296 (Cal 1913). Pursuant to Cal.Civ.Code 2792, a forbearance agreement, such as the one at hand, "not having been entered into concurrently with the original obligation, requires a consideration to support it." Id.

The Banks liens against the Garrett Properties are subject to the Garrett Trust's right to rescind or cancel the Trust Deeds under applicable law. Under California law, deeds of trust may be subject to cancellation or rescission on various grounds, including fraudulent misrepresentation. Security-First Nat.Bank of Los Angeles v. Earp, 19Cal.2d774(1942). Under Cal .Civ.Code 1689 (b)(1), contracts may be subject to rescission because consent was made by mistake, or obtained through duress, menace, fraud, or undue influence. Donovan v. RRL Corp.26 Vsl.4th 261 (2001). The Garretts have the burden of proof on their rescission/cancellation claims.

Therefore the Courts Conclusions of Law are as follows:

## CONCLUSIONS OF LAW

1. The First Guaranty of the $500,000 loan to Garrett Brothers, Inc. was not a continuing guarantee within the meaning of Civil Code §2814. Decision, 9:28-10:1.

2. The bank's agreement to substantially increase the amount of GBI's debt without the knowledge or consent of the Garrett, fully exonerated the Garrett Trust from any further liability under the first guarantee. Decision, 10:7-12; Civil Code §2819.

3. The substantial increase in GBI's debt under the second and third loans did not fall within the scope of a "renewal, extension, modification, and substitution" of the first loan. Decision, 10:4-7.

4. The Garrett Trust was not bound by the second or third guarantees because it did not sign them. Decision, 10:12-14.

5. When the Garretts met with the bank in March 2008 neither they nor the trust had any liability to the bank. Decision, 10:14-16.

6. Neither the Garretts nor the Trust ratified Roy R. Garrett's forgery of their names on the third guarantee. *Gates v. Bank of America* (1953) 120 Cal.App.2d 571, 547-48.

7. The Garretts are not estopped from denying that they or the trust had any liability to the bank. The bank negligently failed to confirm that the Garretts actually were available to execute the second or third guarantees or that they actually executed those two guarantees. As between two innocent victims, when the negligence of one causes a loss, it must bear that loss. Civ. Code §3543.

8. Because they did not ratify Roy R. Garrett's forgery of their names to the second and third guarantees, neither the Garretts nor the Trust are liable to the bank under those guarantees.

9. By hypothecating its property to secure the debts of GBI, the Trust became a surety is entitled to pursue all of the defenses and remedies available under California law. (Civ. Code §2787.) Because the Garretts were exonerated from the first guarantee and they are not bound by the second and third guarantees as set forth, *supra*, the waivers in those guarantees do not apply to the three deeds of trust executed by the Garretts.

10. The deeds of trust have been rescinded by the Trust on the basis of failure of consideration (Civ. Code §1689) as follows:

   a) the forbearance agreement here, not having been entered into concurrently with the original obligation, requires consideration to support it. Decision, 13:19-22.

   b) under California law, the bank's liens are subject to the Garrett Trust's right to rescind them or cancel them, which they may do on various grounds, including fraudulent misrepresentation, mistake, duress, menace, fraud or undue influence. Decision, 13:25-14:4.

   c) The consideration for the bank's liens failed because the Garretts and the Trust were not liable to the bank under the second or third guarantees, and thus there was nothing from which the bank could forebear.

11. The deeds of trust have also been rescinded by the Trust on the basis of mistake (Civ. Code §1689) because both the bank and the Garretts believed incorrectly that the bank had an enforceable right against them.

12. The deeds of trust have also been rescinded by the Trust on the grounds of duress (Civ. Code §1689). The Garretts were afraid to object to the deeds of trust because the bank would otherwise foreclose on their residence. Further, the wrongful assertion of a legal right such as claiming that the Garretts were liable under its third guarantee constitutes duress.

13. The deeds of trust have also been rescinded by the Trust on the basis of misrepresentation (Civ. Code §1689). The bank asserted a right to enforce the third guarantee against the Trust when it knew that it had no knowledge whether the trustee's signatures were valid. Loan officer Knoch's knowledge that the bank did not know whether the signatures on the third guarantee were those of the trustees is imputable to the bank.

Dated: August 15, 2010

_____
Richard T Ford, United
States Bankruptcy Judge

15